## CONSOLIDATED VAPOR–STOVE CO. v. ELLWOOD GAS–STOVE & STAMPING CO.

(Circuit Court, W. D. Pennsylvania. September 17, 1894.)

### No. 8.

PATENTS—LIMITATION OF CLAIMS—INFRINGEMENT—GASOLINE STOVES.

The Whittingham patent, No. 235,600, for a gasoline stove, if valid, is strictly limited by the terms of its specifications, and by the prior state of the art, to a stove having a burner plate with the vaporizing and "fixing" chambers projecting laterally therefrom, and connected by a conduit extending across the under side thereof, and is not infringed by a stove in which the fixing chamber is located on the under side of the burner plate.

This was a suit for the alleged infringement of a patent.

George H. Christy and Hoyt & Dustin, for complainant.

John R. Bennett, Harold Binney, and Lyon, McKee & Sanderson, for defendant.

BUFFINGTON, District Judge. The Consolidated Vapor-Stove Company of Cleveland, Ohio (assignees of the patent), file this bill against the Ellwood Gas-Stove & Stamping Company of Ellwood, Pa., for alleged infringement in the manufacture of gasoline stoves of letters patent No. 235,600, issued December 14, 1880, to Charles and Joseph Whittingham. The answer denies patentability and infringement. The device described in the Whittingham patent is, in the parts needful to now consider, described as follows: From an elevated oil fount a pipe leads to one of two chambered ears or projections on opposite sides of a burner plate, and connected by a conduit across the lower side and at one side of the central tube of said plate. From the second chamber depends a pipe having an arm with a socket, in which a valve stem is screwed for controlling a jet orifice, which is located directly under, and a short distance from, the central tube. Surmounting the plate is a burner cap, provided with two rows of jet holes, the lower one being just above the upper surface of the chambers. After the burner is initially started,—the mode of doing which is not material to the present inquiry,—its workings are as follows: The upper surface of the chambers being highly heated by direct action of the flames from the lower row of jet holes and the connecting conduit by conduction through the heater plate, the oil passes to the first or vaporizing chamber, where it is vaporized. This vapor then passes through the conduit, where it is superheated, and into the second or "fixing" chamber, where it is still further superheated, and becomes "fixed," or a sort of fixed gas. It then passes through to the jet orifice, and spurts into the central tube, carrying with it a supply

of air up to the burner cap, and passes out the rows of holes, where combustion takes place.    The flames from the lower row serve the double purpose of furnishing heat for cooking, a vessel being placed above the burner cap, and of vaporizing the oil and fixing the gas by means of the chambered projections and the connecting conduit.

The only claim in question is the first, which is for—

"The circular plate, B, having the chambered projections, C, D, and connecting conduit, E, and provided with the central tube, F, surmounted by the perforated cap, S, in combination with the vertical tube, A, and angular pipe, G, H, and socket, I, provided with orifice, K, controlled by the valve, J, as shown and described, and for the purpose specified."

At the date of the patent the "angular pipe, the vertical feed tube, with its socket, orifice, and controlling valve," were old, and were used in connection with a vertical commingling tube.    As touching the chambered projections, the specification says:

"Surmounting the plate, B, is a perforated cap, S.   The flames from the lower row of perforations supply heat to the upper surfaces of the chambered projections, C and D.   These two points are where the generation of vapor takes place, and is therefore perfect, being the hottest place, and without detracting from the heat of the burner for the other uses to which it is designed."

And to distinguish it from Kell's patent, to which reference had been made, the patentees added:

"We are aware that a rectangular chamber located between the two jets of flames from the perforated cap has been used, and that said chamber has been connected with an induction oil pipe and an eduction vapor pipe; but this has detracted materially from the efficiency of the burner, because of its interference with the flames.   This objection is entirely overcome by the use of the chambered projections at the side of the perforated combustion cap, and just below the level of the lower row of flame jets."

The departure from former methods will thus be seen in so locating the flame which was used for vaporizing and fixing that its efficiency for cooking purposes was not diminished, and this result the patentee secured by placing the chambers where they were impinged from above by flames, viz. at the two points "where the generation of vapor takes place, and is therefore perfect, being the hottest place, and without detracting from the heat of the burner for the other uses to which it is designed."    That is plainly shown by a detail study of the patent.    The claim specifies "the chambered projections, C, D," "as shown and described," and "for the purpose specified."    "As shown and described," in the specifications and drawings, they extend laterally from, and on the plane of, the heater plate.    They are described as "hollow ears," or "projections on opposite sides."    While the term "projections" may apply indifferently to either a downward or lateral one, the term "hollow ear" is limited to a lateral connection.    Webster defines an "ear," in a mechanical sense, as "a projecting part from the side of anything." Then, too, the word "projection" is qualified by the limitation, "on opposite sides," and, to further emphasize it, the "ears," or "projections" are described as "connected by a conduit across the under side of said plate," and "across" does not mean half or three-quarter way, but *quite over* the whole width of the heater plate, all of which is shown in the illustrated drawing.    That the location shown and

described was specific and functional, and not indifferent, will appear from "the purpose specified." In this respect, the specification is explicit. The two points are claimed to be where "the generation of vapor takes place," as "the hottest place," as "therefore perfect," and as "not detracting from the heat of the burner for the other uses." This language cannot be explained away by saying it is a statement of the best mode in which the patentees thought to apply their principle. It is more than that; it is a description of the essential and functional elements necessary to the application of their principle, and is rather a compliance with the statutory requirement to particularly point out and distinctly claim the part, improvement, or combination which they claim as their invention or discovery.

But a much broader construction of the claim is contended for. Complainant's expert testifies that:

"The whole gist of the Whittingham invention, as set forth in the first claim of the patent at issue, is the casting of the downwardly projecting chambers, C, D, and the conduit, E, integral with the heater plate, and so locating and directing them that they can be formed economically without the use of coring, and be within the best, or practically the best, position to get the effect of the waste heat of the burner."

It is contended that the chambered projections in the claim are downward projections, and downward projections only; that they need not project sideways to fulfill the object of the inventor; that the novelty consists not only in these downwardly projecting chambers, "but in the way they are located on the plate, forming the base of the burner cap, so as at the same time they can be economically formed integral with that cap, and at one and the same time, and for this purpose they must necessarily project downwardly, in order that they may be cast without coring;" that by this method of casting they avoid particles of sand sticking to the casting which wash out from the flow of gas and clog the jet orifice. Such a reading of the clause is more ingenious than sound. As opposed to the construction now made by the expert, we have the significant silence of the patent on these points. Indeed, if the gist of the invention was what is now alleged, the patentees were signally successful in not disclosing it. Nor is such a construction proper in view of the prior art, for to so construe it is to work its destruction. The Whittinghams were not pioneers in the field, nor their invention of a primary character. Numerous patents are cited in anticipation, a large number of which were urged as such on argument, but for present purposes it suffices us to discuss but two, viz. Kell's, No. 231,674, issued August 31, 1880, and Prentiss's reissue, No. 7,636, dated April 24, 1877. The Prentiss patent shows a vaporizing chamber at the side of the heater. Though it is claimed to be heated by direct impingement of the flame, we are inclined to the view that it is by conduction. From it a conduit leads along the lower side of the heater plate to a fixing chamber located on said lower side, and heated by conduction. Both chambers are on the same side of the central tube. The specification states:

"Surmounting the central tube, and beneath the cone [burner top], is a plate, upon which the flame from the lower row of perforations in said

cone impinges. This plate is denominated a 'heater plate,' and serves to conduct heat to the generating chamber and surrounding parts of the burner, thereby facilitating the conversion of the oil or fluid into gas."

While the device differs from the Whittingham patent, the process of vaporizing and fixing by two chambers is the same. The fixing chamber, located on the lower side of the heater plate, and heated by conduction, is identical with that of the respondent's device, as we shall see, save that it is on the same side of the central tube with the vaporizing chamber. As far as function goes, the locations are substantially identical, and it clearly anticipates the fixing chamber of the Whittingham device, should that patent have the broad construction contended for. In Kell's patent an induction pipe leads to, and an eduction one from, a central gas generator, which is formed by four conduits at right angles with each other. Above and below the generator was a row of burner jets, so located that the flames from the two rows impinged on them respectively from above and beneath for vaporization purposes. Upper and lower rows were necessary to vaporize the heavier grades of hydrocarbon for which the burner was designed, but it is admitted, if the lighted grades were used, the lower row could be dispensed with, and the device operated by simply enlarging the upper row of jet holes. The chamber and conduit connections of this device may be cast integral, and coring dispensed with.

The prior art being as above, it is clear the advance set forth in the Whittingham patent was not great. Whether it involved patentability we do not feel called upon to decide. It is sufficient for present purposes to pass upon the question of infringement only. The respondent's device has a heating chamber identical with that of the Whittingham patent, but the fixing chamber does not project laterally from the opposite side of the heater plate. It is located on the lower side of that plate, within the periphery of the flame-jet row. The connecting conduit does not lead across the heater plate, but part way only. Consequently the flames from the lower jet row do not impinge on it, but it is heated by conduction through the heater plate. Giving the Whittingham claim what we regard as its reasonable and proper construction, it is clear it is not infringed by this device. The bill must therefore be dismissed at complainant's cost.

Our attention has been called to the case of the present complainant against the National Vapor-Stove & Manufacturing Company, where the present patent was sustained by the circuit court, for the northern district of Ohio, eastern division. 63 Fed. 1000. The facts now before us, and the issues to be passed upon, are wholly different from those in that case, and for that reason the present case must be decided without reference to the conclusion there reached upon different proofs. Let a decree be drawn dismissing the bill, with costs.

ACHESON, Circuit Judge, concurs.